UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-60538-CIV-MARRA/SELTZER

ULTRA-IMAGES, LLC, a
Florida company,

       Plaintiff,

vs.

DARREN A. FRANCLEMONT et al.,

       Defendants.

_____/

## **OPINION AND ORDER**

This cause is before the Court upon Defendants Entertainment U.S.A, Inc. (Entertainment

U.S.A) and Entertainment Productions, Inc.'s ("Entertainment Productions") ("Defendants")

Motion to Dismiss the Second Amended Complaint [DE 160].[1]  The Court has carefully

considered the motion and is otherwise fully advised in the premises.

### I.  Background [2]

According to the Second Amended Complaint, on July 8, 1995, Richard Duane Anderson

("Anderson"), a photographer and resident of Broward County, Florida, took a series of

photographs in Broward County of a model.  (Second Am. Compl. ¶ 24.)  One of these

photographs was entitled the "Jesse Portrait."  (Second Am. Compl ¶ 25.)  Anderson owned the

copyright to this photograph.  (Second Am. Compl. ¶ 29.)  On December 17, 2004, Anderson

---

[1] Entertainment U.S.A. of Cleveland, Inc. had been a party to this motion; however, Plaintiff filed a Notice of Voluntary Dismissal Without Prejudice [DE 197] with respect to this Defendant on December 1, 2006.

[2] The Court presumes familiarity with the facts set forth in its prior Order. [DE 110]

assigned all of the rights, title, interest in and causes of actions relating to the Jesse Portrait to

Plaintiff Ultra-Images, LLC ("Plaintiff" "Ultra-Images"), a Fort Lauderdale based company.

(Second Am. Compl. ¶¶ 1, 31.)  Soon thereafter, Plaintiff filed a copyright registration on the

Jesse Portrait.  (Second Am. Compl.  ¶ 32.)

Defendant Darren Franclemont ("Franclemont"), a resident of Broward County, Florida,

copied the Jesse Portrait for the benefit of himself and his Fort Lauderdale companies,

Defendants Ded Dog Designs, Inc. and J. Dog Media, Inc.  (Second Am. Compl. ¶¶ 2-4, 36.)  J.

Dog Media operates as an advertising agency. (Exh. 18, attach. to Second Am. Compl.)  One of

J. Dog Media's clients is Christie's.  (Anderson Aff.  ¶ 2, Exh. 1, May 25, 2005.)

Defendant Entertainment Productions, a Tennessee company, does business as

"Christie's."  (Cooper Dep. 27, June 9, 2006.)  The Second Amended Complaint alleges that

Christie's has infringed on Plaintiff's copyright of the Jesse Portrait by posting a billboard in

Memphis, Tennessee that advertises "Christie's Cabaret."  (Second Am. Compl. ¶ 40, Exh. 13,

attach. to Second Am. Compl.)  In addition, the Second Amended Complaint alleges that

Christie's received copies of the Jesse Portrait through contact with Defendants Franclemont,

Ded Dog Designs and J. Dog Media. (Second Am. Compl. ¶ 41.)

In the Court's January 3, 2006 Order, the Court granted the parties leave to conduct

jurisdictional discovery.  After finding a basis for state long-arm jurisdiction, the Court did not

reach the question of whether sufficient minimum contacts exist to satisfy the Due Process

Clause of the Fourteenth Amendment and whether maintenance of the suit offended "traditional

notions of fair play and substantial justice."  International Shoe Co. v. Washington, 326 U.S. 310,

316 (1945).  Instead, the Court ordered the parties to direct their discovery towards the issue of

2

how Defendants' alleged copyright infringement was "expressly aimed" at Florida and how Defendants knowingly acted to cause harm in Florida.  In so doing, the Court informed the parties that it required additional evidence to engage in an analysis set forth in <u>Calder v. Jones</u>, 465 U.S. 783 (1984).

Each party had the opportunity to provide the Court with additional facts garnered through jurisdictional discovery.  Defendants provided the Court with the following record evidence in their renewed motion to dismiss for lack of personal jurisdiction [DE 160] as well as their supplemental statement of evidence [DE 193]:

Entertainment Productions owns and operates a Christie's club in Memphis, Tennessee (Cooper Dep. 27.)  Entertainment U.S.A. is responsible for handling payroll taxes and paying bills for the different Christie's clubs located throughout the country. (Cooper Dep. 22, 24, 45, 69.)  Steve Cooper is an officer of Entertainment U.S.A. and Entertainment Productions. (Cooper Decl. ¶ 1, May 5, 2005, DE 32; Cooper Decl. ¶ 1, May 23, 2005, DE 53.)  These Defendants do not do any business in Florida. (Cooper Decl. ¶ 2, DE 32; Cooper Dep. 69.)  Nor do they advertise in Florida, have an office in Florida, or recruit talent from Florida. (Cooper Decl. ¶ 2, DE 32; Cooper Decl. ¶ 2, DE 53; Franclemont Dep. 167, Mar. 15, 2006.)  They did not use, copy or display the Jesse Portrait photograph in Florida. (Cooper Dec. ¶ 3, DE 32; Cooper Dec. ¶ 3, DE 53.)  Defendants do not send people to Florida to conduct business on their behalf. (Cooper Dep. 74-75.)

Each separate Christie's club pays for its own advertising, an expense not borne by Entertainment U.S.A. (Cooper Dep. 62.)  Entertainment U.S.A. has not used the alleged infringing photograph, either in Florida or elsewhere. (Cooper. Dep. 80.)  Entertainment U.S.A.

3

does not do business with Florida vendors, with the exception of Defendant Franclemont. (Cooper Dep. 77.)

In 1995, Franclemont worked for Entertainment U.S.A. (Cooper Dep. 34-35; Franclemont Dep. 102.) Later, when Franclemont owned his Fort Lauderdale-based businesses, he did work for individual Christie's clubs and billed each club separately for his services. (Franclemont Dep. 106-07.) No one from Entertainment U.S.A. met with Franclemont in Florida. (Franclemont Dep. 107, 109.)

Lastly, in the early 1990s, Entertainment U.S.A., Inc. had a club in Boynton Beach, Florida and had some vendors associated with that club. (Cooper Dep. 78.)

Plaintiff provided the Court with the following record evidence in support of its response memorandum:

In 1995, Defendant Franclemont began working for Entertainment U.S.A. in Memphis as a graphic designer and head of the art department. (Cooper Decl. 30-33; Franclemont Dep. 16-17.) Franclemont, who was recruited by Steve Cooper, also procured photographs for Entertainment U.S.A. (Franclemont Dep. 17-18.) Franclemont traveled in 1995 to Fort Lauderdale, Florida and bought photographs from Anderson to be used by Entertainment Productions.[3] (Cooper Dep. 30-32; Franclemont Dep. 20-21.) One of those photographs included the Jesse Portrait.[4] (Cooper Dep. 28, 31-34.) Franclemont met Anderson at Anderson's

_____

[3] For little under a year, Franclemont would work three weeks in Memphis and one week in Fort Lauderdale (Franclemont Dep. 22.)

[4] Cooper testified that while Defendant Franclemont obtained the Jesse Portrait photograph in 1995, the photograph was not displayed on a sign until approximately six to eight years ago. (Cooper Dep. 31-35; Exh. 18, attach. to Second Am. Compl.)

home in Fort Lauderdale and paid Anderson with a check.  (Franclemont Dep. 23.)  Each

photograph cost $100.00. (Franclemont Dep. 23.)  Franclemont then took Anderson's

photographs and scanned them.[5] (Franclemont Dep. 24.)

Cooper acknowledged that Entertainment Productions "owns" the sign containing the

Jesse Portrait photograph, and that he authorized the creation and display of that sign. (Cooper

Dep. 27-28; 79-80.)  Cooper claims that he signed a check for Anderson's photographs. (Cooper

Dep. 31-33.)   Beginning in 1995 and continuing through 2005, Cooper continued to work with

Franclemont and his advertising agency. (Cooper Dep. 22, 28, 36.)

Anderson stated that he provided photographs to Franclemont for use by Entertainment

U.S.A. and informed him that the photographs were copyrighted and that Anderson's approval

was required for the use of the photographs. (Anderson Decl. ¶¶ 1-3, July 7, 2006.)

Franclemont returned the photographs to Anderson, told him that Entertainment U.S.A was not

interested in the photographs, and did not pay Anderson for the photographs. (Anderson Decl. ¶

4, July 7, 2006.)

Anderson also claims that another employee of Entertainment U.S.A., Renato Carrettin,

discussed buying photographs from him. (Anderson Decl. ¶ 6, July 7, 2006.)  Anderson sent

Entertainment U.S.A. photographs for review and included documentation regarding the use of

these photographs. (Anderson Decl. ¶ 7, July 7, 2006.)  Additionally, Entertainment U.S.A. sent

correspondence directly to Anderson to obtain additional photographs. (Anderson Decl. ¶ 8, Exh.

3, attached to Anderson Decl.)

---

[5] Franclemont remembers scanning these photographs in 1995.   (Franclemont Dep. 24.)

Lastly, in the 1980s, Cooper owned 50 percent of the real estate of a Boynton Beach, Florida cabaret club named "Tiffany's Cabaret." (Cooper Decl. 70.)

In support of its reply memorandum, Defendants provided the Court with the following evidence:

Tiffany's Cabaret was sold in the early 1990s prior to the formation of Entertainment U.S.A. (Cooper Decl. at 71.)

## II. Discussion

Defendants renew their motion to dismiss the Second Amended Complaint for lack of personal jurisdiction because they did not expressly aim any alleged wrongdoing towards Florida, and they did not knowingly act to cause harm in Florida as required under the Calder test. (Def. Mot. 3.) In response, Plaintiff argues that Defendants expressly aimed their conduct at Florida when they (1) contacted Franclemont in Florida to hire him as an employee; (2) sent Franclemont, as their employee, to Florida to meet with Anderson to obtain the Jesse Portrait Photograph; (3) had Franclemont obtain the Jesse Portrait photograph from Anderson in Florida; (4) received from Anderson a delivery memo reflecting Anderson's copyright ownership in the photograph at issue and (5) directly communicated with Anderson in an effort to obtain additional photographs.[6] (Pl. Resp. 11.)

When, as here, a district court does not conduct a discretionary evidentiary hearing,

---

[6] The Court notes that Plaintiff renews its argument that it is asserting specific jurisdiction over Defendants. (Pl Resp. 10; December 20, 2005 Order at 8 n.6 [DE 110]; December 21, 2005 Order at 8 n.5 [DE 111]. ) Thus, although Plaintiff claims that Defendants' continual communication with Franclemont and his companies in Florida regarding advertising work are grounds for personal jurisdiction over these Defendants, the Court finds that these facts do not relate to obtaining and using the infringing photograph at issue here and thus do not support specific jurisdiction over these Defendants.

6

plaintiff's burden in alleging personal jurisdiction requires that it establish a prima facie case of personal jurisdiction over a nonresident defendant. Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990). A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict. The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. If by defendant's affidavits or other competent evidence, defendant sustains the burden of challenging plaintiff's allegations, the plaintiff must substantiate the jurisdictional allegations in the complaint by affidavits, testimony or documents. However, where the evidence conflicts, the district court must construe all reasonable inferences in favor of the plaintiff. Robinson v. Giamarco & Bill, P.C., 74 F.3d 253, 255 (11th Cir. 1996) citing Madara, 916 F.2d at 1514.

In establishing minimum contacts in a specific jurisdiction case, a defendant's contact with Florida must meet three criteria: First, the contacts must be related to the plaintiff's cause of action or have given rise to it. Second, the contacts must involve some purposeful availment of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its laws. Finally, a defendant's contacts within the forum state must be such that he should reasonably anticipate being haled into court there. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 631 (11th Cir. 1996). Furthermore, in addressing personal jurisdiction in the context of intentional torts, the United States Supreme Court has held that personal jurisdiction can be based on an intentional act that was "expressly aimed" at the forum state and which defendant knew would cause harm in the forum state. See Calder, 465 U.S. at 789-90. Personal jurisdiction over defendants may be

based on the "effects" of their conduct. Id. at 789.

Calder concerned a suit brought by a California entertainer and resident, who claimed she was a victim of libel by an article published in the National Enquirer, a publication with a large California circulation.  Id. at 784. The Calder defendants were residents of Florida.  Id. at 785-86. One of the defendants, a reporter, did most of his research in Florida and made several telephone calls to California for information.  Id. at 785.  The other defendant had no contacts with Florida, and simply reviewed the reporter's article.  Id. at 786.  In finding that personal jurisdiction over the Florida defendants was properly asserted in the California court, the Supreme Court noted that the defendants knew that the article would harm the plaintiff and that the injury would be sustained by the plaintiff in California, the state where she lived and worked and where the publication had its largest circulation.  Id. at 789-90.

In interpreting Calder, the United States Court of Appeals for the Third Circuit has stated that the Calder decision relied upon "three principal findings;" namely, that the "defendant committed an intentional tort," "the forum state was the focal point of the harm suffered by the plaintiff as a result of that tort" and "the forum was the focal point of the tortious activity in the sense that the tort was 'expressly aimed' at the forum."  IMO Industries, Inc. v. Kiekert AG, 155 F.3d 254, 261 (3d Cir. 1998).  Significantly, the Third Circuit stated that  Calder "did not change the fact that even in intentional tort cases the jurisdictional inquiry focuses on the relations among the defendant, the forum, and the litigation."  IMO Industries, 155 F.3d at 265 citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770 (1984) (internal quotation marks omitted).

Several courts have applied Calder to intellectual property cases.  For example, in Dakota Industries, Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384 (8th Cir. 1991), the Eighth Circuit held

that the California defendant could "reasonably expect to be haled into court" in South Dakota

based on the defendant's knowledge that it was violating the plaintiff's trademark and the

evidence that the defendant sold clothes with the infringing mark in South Dakota. Id. at 1391.

Additionally, in Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd.

Partnership, 34 F.3d 410 (7th Cir. 1994), the Seventh Circuit concluded that a Baltimore,

Maryland defendant was subject to personal jurisdiction in Indiana based on its alleged use of the

trademarked name "Colts," in the playing of professional football, the broadcast of football

games, and the sale of merchandise to football fans and other buyers.  In examining the

applicability of Calder, the Seventh Circuit concluded that personal jurisdiction over the

defendant was proper based on the defendant's alleged commission of an intellectual property

infringement tort (whose harm was felt in Indiana) and the defendant's entry into Indiana based

on the defendant's broadcasts in Indiana.

      Viewing the facts in the light most favorable to Plaintiff and construing all reasonable

inferences in favor of Plaintiff, the Court finds that the evidence demonstrates that Entertainment

U.S.A and Entertainment Productions have the requisite minimum contacts with the State of

Florida.  Plaintiff's evidence of Defendants' contacts with Florida clearly relates to the use of the

infringing photograph by Defendants.  Indeed, Entertainment U.S.A. hired a Florida resident,

Franclemont, to be its art director and to obtain photographs on its behalf as well as on behalf of

Entertainment Productions.  As part of Franclemont's job, he traveled to Florida and met with

Anderson, a Florida photographer.  That meeting eventually led to Franclemont obtaining the

Jesse Portrait photograph (the allegedly infringing photograph), which was then provided to

Entertainment Productions.  As such, Defendants availed themselves of the privilege of

9

conducting activities - purchasing photographs from a Florida photographer - within Florida.   By hiring a Florida resident to buy photographs sold in Florida for Defendants' use, it is entirely reasonable to conclude that Defendants should have anticipated being haled into a Florida court. Moreover, these acts undertaken in Florida on Defendants' behalf were clearly intentional. Indeed, Anderson provided Franclemont with a delivery memo that reflected his copyright ownership in the Jesse Portrait photograph.  Thus, Franclemont, as Defendants' employee representative, knew that the unauthorized use of the photograph would infringe on the Florida resident's copyright, and thus cause Plaintiff harm.

        Likewise, in applying the analysis set forth by the <u>Imo</u> Court in interpreting <u>Calder</u>, the Court finds that the evidence demonstrates that Defendants committed an intentional tort when their employee, Franclemont, scanned the Jesse Portrait photograph that Anderson provided him and supplied the photograph to Defendants without compensating Anderson. Clearly, in sending Franclemont to Florida to obtain photographs from a Florida resident, Defendants knew that Plaintiff, the owner of the copyright, would suffer monetary harm when the photograph was used without permission of the copyright owner.   Thus, the act of Franclemont, on behalf of Defendants, was expressly aimed at the copyright holder in Florida.

        To be sure, Defendants argue for a result different from the one reached here.  In support, Defendants claim that there is no evidence that they "used or displayed the infringing photograph in Florida" and that personal jurisdiction can not be based "solely" on the fact that Plaintiff's principal place of business is located in Florida (Def. Mot. 11-12)   The facts before the Court, however, demonstrate that Defendants entered the state for jurisdictional purposes when they sent their employee to Florida to obtain photographs.  Thus, although Defendants did not display

the infringing photograph in Florida, Defendants' contacts with Florida, in its effort to obtain the

photograph without paying the copyright owner, constitutes an express act that Defendants knew

would cause harm in Florida.  Clearly, then, Defendants' contention that a finding of personal

jurisdiction on these facts would result in personal jurisdiction over a defendant based merely on

the existence of a plaintiff's principal place of business in the forum state is mistaken.  The

Court's analysis does not hinge on the location of Plaintiff's principal place of business.  Instead,

it rests on evidence showing entry into Florida by Defendants' employee to obtain and use a

photograph without permission or payment to the Florida copyright holder.[7]  See Indianapolis

Colts, 34 F.3d at 412 (entry by the defendant into the state required to meet Calder's effects test).

In addition, Defendants claim that Plaintiff "disregards the corporate form" and fails to

isolate each Defendants separate contacts with Florida.  (Def. Reply at 3.)  Although the parties'

initial papers suffered from this deficiency, Plaintiff's supplemental memorandum and the

citations therein has cured this deficiency by highlighting the connection of Defendant

Franclemont to the Jesse Portrait photograph as well as to his previous employer, Defendant

Entertainment U.S.A., and to Defendant Entertainment Productions, an entity doing business as a

Christie's club, and connected to Defendant Entertainment U.S.A.  (Pl. Suppl. 3-10.)

---

[7] Defendants claim that Entertainment Productions was incorporated three years after the
termination of  Franclemont's employment with Entertainment U.S.A. (Def. Reply 3.)  No
evidence in support of this assertion has been presented to the Court, despite the Court's
instruction to provide evidence for each factual assertion relied up by the parties [DE 189].  The
Court also notes that Defendants' claim that they paid Anderson for the photograph does not alter
the jurisdictional analysis since payment or non-payment to Anderson does not change the extent
of the contacts by Defendants to Florida.  Under either version of the facts, Defendants still sent
their employee to Florida for the purpose of obtaining the photograph.  As stated herein, when
the evidence conflicts, the Court must construe all reasonable inferences in favor of the plaintiff
when making a determination concerning personal jurisdiction. Robinson, 74 F.3d at 255.  Thus,
the Court accepts as true the allegation of non-payment.

Nor does Defendants' reliance on <u>Metallic Ceramic Coating, Inc. v. Precision Prods, Inc.</u> support their position that their 1990 contact with Plaintiff was "well before the alleged infringement" took place. (Def. Reply 5.)   <u>Metallic Ceramic Coating, Inc. v. Precision Prods, Inc.</u>, Civ.A. No. 00-CV-4941, 2001 WL 122227 (E.D. Pa. Feb. 13, 2001).  In that case, the court found that specific jurisdiction did not exist over a defendant based on a prior contract entered into by the parties because the cause of action "did not relate to the terms or existence of the contract" and because the contract "occurred prior to the infringement."  <u>Id.</u> at * 6.  In <u>Metallic</u>, the plaintiff had given the defendant permission to use its trademark, but when the business relationship ended, the plaintiff demanded that the defendant stop using the mark. <u>Id.</u> at * 1.  In contrast, based on the allegations and construing all reasonable inferences in Plaintiff's favor, Plaintiff never gave Defendants permission to use the allegedly infringing photograph. Moreover, unlike <u>Metallic</u>, Plaintiff's cause of action relates to the obtainment of the photograph by Franclemont in the 1990s.

In sum, the Court concludes that the minimum contacts required by the Due Process Clause of the U.S. Constitution have been met for jurisdictional purposes.

Next, the Court must examine whether jurisdiction over Defendants would offend "traditional notions of fair play and substantial justice."   In this Circuit, the factors to decide whether the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice" are: 1) the burden on the defendant in defending the lawsuit; 2) the forum state's interest in adjudicating the dispute; 3) the plaintiff's interest in obtaining convenient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies and 5) the shared interest of the states in furthering fundamental

substantive social policies.  <u>Cronin v. Washington Nat. Ins. Co.</u>, 980 F.2d 663, 671 (11th Cir. 1993) <u>citing</u> <u>Asahi Metal Industry Co. v. Superior Court of California</u>, 480 U.S. 102, 113 (1987); <u>Madara</u>, 916 F.2d at 1517.

The Court finds that Defendants are amenable to personal jurisdiction in Florida and that there is no violation of "traditional notions of fair pay and substantial justice."  In reaching this conclusion, the Court notes that Florida has an interest in adjudicating a dispute that revolves around an out-of-state corporation sending an employee to Florida for the purpose of infringing on the copyright of a Florida plaintiff.  Furthermore, Plaintiff has sued numerous Defendants, including several Florida Defendants, and it is in the interstate judicial system's interest to litigate this case in one forum to the extent it is constitutionally permissible to do so. Plaintiff will also obtain the most convenient and effective relief by litigating this case in Florida. That is particularly true where Plaintiff alleges that Franclemont and his Florida-based advertising agencies supplied the infringing photographs to other Defendants.  Lastly, "modern transportation and communication have made it much less burdensome" for an out-of-state Defendant to be sued in another state.  <u>Cable/Home</u>, 902 F.2d at 858 (citations omitted).

In sum, based on the Court's previous finding that Florida state long-arm jurisdiction exists over the Defendants [DE 110 and 111], the Court also concludes that the requirements of the Due Process Clause of the Fourteenth Amendment have been met and jurisdiction over these Defendants would not offend traditional notions of fair play and substantial justice.  Since Defendants remaining argument of improper venue rests on a determination in its favor on personal jurisdiction, the Court rejects Defendant's argument that the case should be dismissed for improper venue.

III. Conclusion

Thus, it is hereby **ORDERED  AND ADJUDGED** that  Defendants Entertainment

U.S.A., Inc. and Entertainment Productions, Inc.'s Motion to Dismiss the Second Amended

Complaint [DE 160] is **DENIED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County

Florida, this 8th  day of January 2007.

_____

KENNETH A. MARRA
United States District Judge

copies to:

All counsel of record

14